HALL, Chief Judge.
In this action for revocation of interdiction, the curator, Willie David McKeever, appeals the judgment of the trial court which revoked the interdiction of appellee, Charlie Dobbins. Appellant contends that the trial court erred (1) in finding Charlie Dobbins capable, both physically and mentally, to provide the care needed for his *1080 person as well as his estate; and (2) in not ordering limited interdiction for the management of Dobbins’ finances. Finding appellant’s contentions meritless, we affirm.
On February 23, 1984 Willie McKeever filed a petition for interdiction of his uncle, Charlie Dobbins, who is now age 93. On April 17, 1984 Dr. Rel Gray, a court appointed medical expert, examined Dobbins. Dr. Gray found Dobbins to be hard of hearing, impatient, and had difficulty understanding some of the things the doctor wanted to do during the examination. He found good recent memory, and no mental confusion or random talking during conversations. Dr. Gray concluded that Dobbins had cerebral vascular disease with advancing senility which he did not expect to improve. He determined that even though Dobbins was “with it” during his examination, that did not necessarily mean he was that way all the time. Dr. Gray finally concluded that Dobbins had lost much of his ability to make good judgments and for that reason there was some question of Dobbins’ ability to administer his own affairs.
On August 22, 1984, Dobbins was interdicted with Willie McKeever appointed curator. Dobbins continued to live with McKeever until April 1986 when they apparently had an argument about how much cash Dobbins carried around. Dobbins lived off and on with other relatives but subsequently went to live on the Reynolds’ plantation where he had both lived and worked for several years earlier.
In April of 1987, Dobbins filed a petition to revoke his interdiction. After considering the examination by a medical expert and testimony of several witnesses, the trial court rendered judgment revoking Dobbins’ interdiction; directed the cancellation of inscription of judgment of interdiction from the conveyance books in Lincoln Parish; ordered Willie McKeever to submit a final accounting of his administration of Dobbins’ property and to deliver all funds and property in his possession to Dobbins; and ordered costs to be divided equally between McKeever and Dobbins.
I.
Appellant argues that Dobbins is incapable both mentally and physically of taking care of his person and administering his estate. Alternatively, he argues that if full interdiction is not proper, limited interdiction is necessary for the management of Dobbins’ estate.
We find Dobbins capable to both care for his person and administer his estate. Interdiction under the circumstances and facts of this case is unwarranted.
Interdiction ends with the causes which gave rise to it. LSA-C.C. Art. 420. No person above the age of majority, who is subject to an habitual state of imbecility, insanity or madness, shall be allowed to take care of his own person and administer his estate, although such person shall, at times, appear to have the possession of his reason. LSA-C.C. Art. 389. All persons incapable of taking care of their persons and administering their estates due to any infirmity are liable to be interdicted. LSA-C.C. Art. 422. When a person is declared incapable by reason of mental retardation, mental disability, or other infirmity under the provisions of Articles 389 or 422 of the Louisiana Civil Code, of caring for his own person or of administering his estate, a court of competent jurisdiction may appoint a limited curator to such person or his estate. LSA-C.C. Art. 389.1.
At trial Dobbins testified on his own behalf and presented three other witnesses, Mrs. Jennie Reynolds, Gennie Reynolds Crump, and Dr. Paul Ware.
Mrs. Reynolds testified that she had known Dobbins for over 20 years. She was introduced to him when Dobbins first came to work and lived on the Reynolds’ plantation. At the time of trial Dobbins had been living on the plantation for almost a year taking care of himself and the small areas around the house. Dobbins mows the small yard and washes the dishes. She further stated that although Dobbins may be hard of hearing he is capable of discharging his daily activities which included taking his medicines regularly and taking care of his affairs. Mrs. Reynolds purchas *1081 es Dobbins’ medicine from her own funds as he needs them. Dobbins can cook and fix his own breakfast.
Mrs. Gennie Reynolds Crump, who is Mrs. Reynolds daughter, also lives on the plantation approximately fifty yards from her mother. She has known Dobbins since 1960 and considers the arrangement of Dobbins living in the family home agreeable. She is willing to provide any supervision to Dobbins as necessary. She is available to Dobbins and her mother on a daily basis as necessary and does not consider Dobbins’ presence to be either a hardship or inconvenience. She testified that Dobbins had told her on the day of trial that he had his last nitroglycerin patch on and they would need to go get him some more. Dobbins washes his own clothes in the washing machine and appears very neat and clean to her. She stated that Dobbins is not physically able to do as much work as he used to do but his capacity as an expert gardener has not diminished. She stated that Dobbins and her late father were great companions and even after Dobbins left their employment in the late seventies he would return approximately every six weeks to visit and fish. She further stated that Dobbins had problems remembering dates but she had no problem communicating with him. She thought Dobbins could write a check but may need some help keeping the bank balance. She was afraid for Dobbins to live alone in case he got sick.
Charlie Dobbins testified that on July 15th he would be ninety-three years old. He stated that the reason why he was in court was because he and Willie had fallen out and he wanted to get his clothes and money from him. He testified that he bathed himself and had no money since McKeever was getting his social security checks. He stated that every morning after the Reynolds would eat he washed the dishes and tended a small flower garden. He stated that he was taking medication for his stomach and his doctor was located on Grammont Street in Monroe. He further stated that he could count money but had difficulty adding and subtracting. Normally the bank clerks would help him with his bank account. Dobbins did not remember McKeever being appointed his legal representative.
Dr. Paul Ware initially examined Dobbins on February 16, 1987. He described Dobbins as a tall, slim, well-developed black male who was neatly dressed in a suit and tie. He walked slowly and carefully but smiled and introduced himself. He knew the day of the week, the month, and day of the month. He enjoyed talking about the past and could repeat five digits forward and three digits backwards. Dobbins could handle simple addition and could definitely count money. He knew how many dimes were in a dollar and how many nickles were in a quarter. He gave good responses to similarities and proverbs. Dobbins was told to remember hat, tree, and yellow. Five minutes later he remembered hat and tree but could not remember yellow. When questioned about what he would do if he found an addressed envelope, he said he would look at it and see if he knew the person and take it to him. Dobbins said that if he didn’t know who the person was, he would go ask someone else and get someone to help him mail it. Dr. Ware’s initial diagnosis was minimal senility with mild memory impairment, normal for his age. He found Dobbins to be competent and believed that he was capable of making his own decisions in regard to his welfare and financial matters if they were explained to him.
On the morning prior to trial, nine months subsequent to the initial visit, Dr. Ware examined Dobbins again. He compared this visit with the earlier visit and found it to be similar. Dobbins was aware of why he was going to court and still wanted to live with the Reynolds. He distinguished the difference between a common law wife whom he had lived with for many years and his real wife whom he had married while young. He was aware of his diet and did his own grooming. Dobbins knew his medications and understood how to take and use them.
Dr. Ware met with McKeever and listened to information supplied by him concerning Dobbins behavior. Dr. Ware was *1082 cognizant of McKeever’s different opinion as to Dobbins’ ability to manage his own affairs. Dr. Ware considered it normal for people of Dobbins age to try and hang on to their own independence.
Dr. Ware determined that Dobbins knows when he needs help and his limitations. Dobbins knows how to compensate for his memory limitations. When asked his doctor’s name, Dobbins did not remember it but had written his name down and kept it in his pocket. Dr. Ware stated that this alone required forethought which is a necessary part of managing one’s affairs.
Dr. Ware considered it very fortunate that Dobbins ended up back home with a family he felt a part of. He felt that Dobbins clearly wanted to spend the rest of his life at the Reynolds’ plantation and probably die there. He believed that Dobbins needed assistance in making major financial decisions but did not need a curator to make all his decisions.
In opposition to Dobbins' petition for revocation of interdiction, Willie McKeever and his brother John testified.
John McKeever, who lives in Chicago, Illinois, had seen Dobbins only two or three times a year for the past five or six years. He stated that Dobbins was not in good physical condition because he complained and would lay around. He further, stated that Dobbins could not handle money because he tried to buy an old storage shed to live in seven years ago. He testified that two to three years ago, Dobbins would leave his cigarettes around and forget about them. He stated that during that time, Dobbins would go fishing and not tell anyone where he was going.
Willie McKeever testified that in 1984 it was necessary to interdict Dobbins when he had prostate cancer which required surgery. He stated that Dobbins was taking medications too strong for him and was in no condition to sign. During the period from August 1984 until April 1986 McKeever stated that Dobbins improved somewhat. He stated that Dobbins would burn up pots and pans on the stove, would not take a bath when he was supposed to, and would wear the same clothes daily. He testified that Dobbins would make decisions and was aware of when his social security check came. He stated that on one occasion Dobbins had seven hundred dollars in his pocket at a doctor’s office which someone took from him after he fell asleep. McKeever stated that the only business decision which Dobbins tried to make on his own was to buy a shed in 1981 to live in. He stated that Dobbins lost five hundred dollars on the contract. McKeever further testified that Dobbins’ life was in danger since he lived in the house with Mrs. Reynolds and had been threatened. He stated that at the time of trial Dobbins condition was worse than it was in 1984 when he was first interdicted.
We find that the trial court did not err in revoking Dobbins’ interdiction. Dobbins may have some limitations due to his age but he is well aware of them. He grooms himself and works on the Reynolds’ plantation to the best of his ability. While Dobbins may not be able to make the best decisions concerning finances, appellant has pointed out only one occasion where Dobbins may have made a bad deal trying to buy a shed over seven years earlier. While he may need some supervision to help balance a checkbook, if he so chooses to use one, tjie supervision necessary for his subsistence is not of the level requiring a curator. Dobbins is well aware of his physical limitations and medical needs. Dr. Ware’s current evaluation is afforded great weight. Most of appellant’s evidence concerned Dobbins’ actions prior to the 1984 interdiction. At this point in time Dobbins is capable both mentally and physically to care for his person and administer his estate.
II.
Appellee in brief requests this court to reverse the judgment below ordering the parties to share the costs. We find that plaintiff did not answer or appeal the judgment below and his request cannot be considered. Welborn v. Ashy Enterprises, Inc., 504 So.2d 120 (La.App. 2d Cir.1987).
*1083 III.
Accordingly the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.